# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 14, 2026

Lyle W. Cayce
Clerk

No. 25-50311

LOUIS FLORES,

*Plaintiff—Appellee*,

*versus*

FELIX PEREZ, *in his individual capacity*; JACKSON PIERRON, *in his individual capacity*; JORGE PASTORE, *in his individual capacity*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:23-CV-673

Before CLEMENT, DOUGLAS, and RAMIREZ, *Circuit Judges*.

PER CURIAM:[*]

Plaintiff-Appellee Louis Flores brought an excessive-force claim against Austin Police Department ("APD") Officers Felix Perez, Jackson Pierron, and Jorge Pastore (the "Defendant Officers") arising from their use of force on Flores during his arrest on Sixth Street in Austin, Texas. The district court denied the Defendant Officers' motion for summary judgment

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-50311

on qualified immunity, finding that genuine disputes of material fact precluded summary judgment and that a jury could conclude the Defendant Officers violated Flores's clearly established right to be free from excessive force. This interlocutory appeal followed. Because the district court correctly denied qualified immunity, we AFFIRM.

I

At around 2:00 a.m. on January 15, 2023, APD Officers Perez, Pierron, and Pastore were on patrol on Sixth Street following bar closures. Officer Perez believed he observed Flores grab the reins of a police horse named Lucky, ridden by Corporal Kilgore.[1] Whether Flores actually pulled Lucky's reins is disputed. Body-worn camera footage shows Flores's hand near the horse's head but does not capture him making contact with the horse or pulling its reins.

Officer Perez ran toward Flores from approximately 60 feet away to effect an arrest for interference with a police service animal. Flores was facing away from Perez as he approached. Perez was wearing his standard-issue police uniform, but his badge was partially obscured by a red flower pinned to his chest. Officer Perez grabbed Flores's wrist and ordered him to put his hands behind his back without identifying himself as a police officer. About four seconds later, Flores pulled his arm away. Officer Perez immediately performed a takedown.

Officers Pierron and Pastore joined to assist. While Flores was on the ground, Officer Perez placed his knee on Flores's stomach, pressed Flores's face onto the pavement, and pulled his arm nearly 90 degrees away from his body. Officer Pierron drove his knee into Flores's upper back and neck and

---

[1] Corporal Kilgore is not a party to this appeal.

twisted his right arm beyond its normal range of motion. Officer Pastore held Flores's legs and pressed his knee into Flores's lower back. Flores testified that he felt that people were "striking," "grabbing," and "pulling" him while he was on the ground. Officer Perez and Pastore's body-worn cameras cut out intermittently during this period.

Flores was charged with interference with a police service animal, resisting arrest, and resisting transport. The Travis County District Attorney's office dismissed all charges after reviewing the body-worn camera footage. After his release from custody, Flores sought medical care from physicians at Ascension Seton Williamson Hospital, which diagnosed him with a traumatic brain injury, thoracic spinal fractures, cervical spine injuries, a dislocated right shoulder, a torn labrum, a torn bicep, and a broken humerus. He underwent complex spinal fusion surgery.

Flores sued Officers Perez, Pierron, and Pastore for excessive force under 42 U.S.C. § 1983 and bystander liability. He also brought a *Monell* claim against the City of Austin (the "City"). The Defendant Officers and the City moved for summary judgment. After an evidentiary hearing, the district court granted summary judgment for the City on the *Monell* claim and for Officers Pierron and Pastore on bystander liability. It denied the Defendant Officers' motion as to the excessive force claim, finding that genuine disputes of material fact precluded summary judgment and concluding that "if a jury accepts [Flores's] version of the facts as true . . . the jury could conclude that Defendant Officers violated Flores's clearly established right to be free from excessive force." The Defendant Officers appealed the excessive force claim.

## II

Ordinarily, denials of summary judgment are not immediately appealable under 28 U.S.C. § 1291. However, "the denial of qualified

No. 25-50311

immunity is immediately appealable under the collateral order doctrine when based on an issue of law." *Garcia v. Orta*, 47 F.4th 343, 349 (5th Cir. 2022) (citation modified); *Mitchell v. Forsyth*, 472 U.S. 511, 524–29 (1985). This court does not have jurisdiction to review the *genuineness* of a fact issue identified by the district court precluding qualified immunity, but it may review the *legal materiality* of the district court's identified fact issues. *See Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020). We review the denial of qualified immunity at summary judgment de novo. *Edwards v. Oliver*, 31 F.4th 925, 928–29 (5th Cir. 2022).

III

Qualified immunity involves two inquiries: whether the officer violated a constitutional right, and whether the right was clearly established at the time. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). The first question asks whether the facts, viewed in the light most favorable to the party asserting the injury, show that the officers violated a constitutional right. *Id.* To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was excessive to the need, (3) the excessiveness of which was clearly unreasonable." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). Three factors guide the reasonableness inquiry: "(1) the severity of the crime at issue; (2) whether the suspect pose[d] an immediate threat to the safety of the officers or others; and (3) whether the suspect [was] actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation modified).

The Defendant Officers' opening brief does not develop a challenge to the injury or causation elements. The district court found both elements supported and we proceed on that basis. We analyze Officer Perez's

takedown, the on-ground force used by each Defendant Officer, and clearly established law in turn.

A

The Defendant Officers maintain that Officer Perez's takedown was justified by Flores's pulling away from his grasp. They contend that the disputed facts about the horse are immaterial because Officer "Perez did not perform the takedown because Flores [allegedly] pulled the reins of the horse." The premise of that materiality argument is that the takedown turned on the arm-pulling alone.

The objective *Graham* inquiry is not so narrow. It assesses force in light of "the facts and circumstances of each particular case," judged "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. Those circumstances include the 2:00 A.M. setting, the crowded street, the proximity of police horses, and the events leading to the encounter. *See Tucker v. City of Shreveport*, 998 F.3d 165, 178–80 (5th Cir. 2021). Whether Flores actually pulled Lucky's reins bears on what a reasonable officer would have perceived. The dispute is material, and we conclude that the *Graham* factors weigh against the Defendant Officers.

The first factor is the severity of the crime. Interference with a police service animal and resisting arrest are both Class A misdemeanors under Texas law. Tex. Penal Code §§ 38.151(c)(3), 38.03(a). And misdemeanor offenses "militat[e] against the use of force." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *see also Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir. 2017). This factor therefore weighs against Officer Perez.

The second factor concerns immediate threat. Flores was unarmed and bodycam footage reveals he made no threatening movement. The district court found a genuine dispute as to whether he in fact pulled Lucky's reins or whether the horse turned in response to any contact. The horses had

moved past Flores by the time of the takedown. And pulling "[an] arm out of [an officer's] grasp, without more, is insufficient to find an immediate threat to the safety of the officers." *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013). The Defendant Officers invoke *Tucker* for the proposition that surrounding circumstances can supply the "more" that *Ramirez* found lacking. 998 F.3d at 178–80. *Tucker* presented a fleeing suspect who led officers into a high-crime residential area and displayed extreme and increasing agitation just before his takedown. *Id.* at 178–79. The record here contains no analogue. The second factor weighs in favor of Flores.

The third factor asks whether the suspect was actively resisting arrest or attempting to flee. The district court found that Flores was at most passively resistant and that a jury could conclude no reasonable officer would have perceived him as actively resisting. We agree. Where conduct amounts to mere passive resistance, the use of injurious force is not justified. *Trammell*, 868 F.3d at 341–42; *Hanks*, 853 F.3d at 746. Flores was given approximately four seconds to comply with commands issued by an officer he may not have recognized as such. We have consistently held that "the quickness with which the officers resort[] to" force "militates against a finding of reasonableness." *Trammell*, 868 F.3d at 342. The third factor too weighs in favor of Flores. [2]

---

[2] The concurring opinion cites *Tuttle v. Gallegos* for its conclusion that we must "account for all relevant circumstances, including the 'events leading up the climactic moment.'" --- F.4th ----, 2026 WL 1861047, at *11 (5th Cir. 2026) (publication forthcoming) (quoting *Barnes v. Felix*, 605 U.S. 73, 76 (2025)). Indeed, context does matter here. We must underscore that it is undisputed that Flores was suspected only of a Class A misdemeanor at the time of his takedown. The concurring opinion also focuses on a factual distinction between this case and *Trammel v. Fuge*, namely that the suspect in that case was "in a parking lot across the street from a club," whereas Flores was taken down on a crowded street at 2:00 A.M. *Trammel* 868 F.3d at 336. But bodycam footage reveals that Flores was not in the thick of the crowd and, again, he was suspected only of a Class A misdemeanor. Also, in *Trammel*, the suspect was given multiple opportunities to comply

On these facts, we conclude that a reasonable jury could find Officer Perez's takedown excessive and unreasonable under the Fourth Amendment.

B

After the takedown, the Defendant Officers restrained Flores. The Defendant Officers correctly note that we "must analyze the officers' actions separately" where excessive force claims are brought against multiple officers in a single arrest. *Buehler v. Dear*, 27 F.4th 969, 985 (5th Cir. 2022). We do so for each.

### *1. Officer Perez*

While Flores was on the ground, Officer Perez placed his knee on Flores's stomach, pushed the side of his face onto the concrete, and pulled his arm nearly 90 degrees away from his body. Flores was surrounded by three officers, unarmed, suspected only of a misdemeanor, and out of the path of pedestrians or horses. He posed no threat. The district court found that any physical resistance perceived was a result of the natural limited range of motion of Flores's body and that overlapping officer commands made compliance difficult. Force exerted to control what at most amounted to a passively resisting suspect who "was never aggressive [or] violent toward the officers prior to being tackled," is excessive. *See Trammell*, 868 F.3d at 342.

### *2. Officer Pierron*

The Defendant Officers contend that Pierron only "assisted in handcuffing Flores by holding [his] right hand on the ground." However, Officer Perez's body camera footage shows that Pierron positioned his knee

_____

with Officer Fuge before he was taken down. *Id.* at 337. Flores received no such warning here.

on Flores's head and maintained a grip on his arm as he was wrestled and rolled onto his stomach by the Defendant Officers. Flores claims that extending his arm beyond its normal range of motion caused a tear in his labrum, a torn bicep, a broken upper arm, and a dislocated shoulder. This conduct closely tracks the post-takedown force at issue in *Trammell*, where this court held that pummeling a non-threatening, at-most-passively-resisting suspect with knees and fists to subdue and handcuff him exceeded constitutional bounds. 868 F.3d at 337–38, 342. The video footage, combined with the differing accounts of the Defendant Officers and Flores indicate that the district court was correct in concluding that material factual disputes predominate as to Officer Pierron's conduct. We agree that these factual disputes are better suited for a jury.

### 3. Officer Pastore

Officer Pastore's role is also contested. The Defendant Officers contend that Officer Pastore did no more than hold and cross Flores's legs while attempting to handcuff him. Flores maintains he was pummeled on the ground. The body-worn camera footage cuts out intermittently during the relevant period. The district court found that the videos do not blatantly contradict Flores's account and we do not disturb that finding. *Scott*, 550 U.S. at 380; *Darden*, 880 F.3d at 730. The disputes about Officer Pastore's conduct are material because, on Flores's version, the conduct could violate the Fourth Amendment under *Trammell*. For Officer Pastore, as well, summary judgment was unwarranted.

### C

The remaining issue is whether Flores's version of the disputed facts constitutes a violation of clearly established law. A right is clearly established when "controlling authority—or a robust consensus of cases of persuasive authority— . . . defines the contours of the right in question with a high

degree of particularity." *Wigginton v. Jones*, 964 F.3d 329, 355 (5th Cir. 2020). Clearly established law is not to be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). However, a plaintiff need not produce a case directly on point. *Id.* at 741.

*Trammell* squarely controls the on-ground force.[3] There, officers tackled a non-violent, at-most-passively-resisting suspect to the ground and pummeled him with knees and fists to subdue him. 868 F.3d at 337–38. This court denied qualified immunity. *Id.* at 342. *Trammell* gives fair notice that, once a non-threatening and at-most-passively-resisting suspect is on the ground, officers may not deliver knee strikes or twist his limbs beyond their natural range to subdue him. The on-ground conduct of Officers Perez and Pierron falls within *Trammell*'s prohibition. Officer Pastore's conduct, on Flores's version, could too.

The takedown presents a closer question, but it is also controlled by clearly established law. *Ramirez* holds that pulling an arm out of an officer's grasp, without more, does not establish an immediate threat. 716 F.3d at 378. *Hanks* holds that suddenly resorting to physical force after brief noncompliance with verbal commands is "clearly excessive and clearly unreasonable." 853 F.3d at 745. [4] The Defendant Officers urge that Sixth

---

[3] In *Trammell*, the plaintiff suffered similar injuries to those suffered by Flores. 868 F.3d at 338. In that case, our court also focused on the speed with which the officers resorted to injurious force, after a protracted conversation between the plaintiff and the officer arriving on the scene. *Id.* at 336-37. Flores received no such warning or conversation. All of the Defendant Officers resorted to injurious force less than sixty seconds after Perez first encountered an unarmed Flores.

[4] We later held in *Trabucco v. Rivera* that *Hanks* "did not settle 'beyond debate'" whether the defendant officer's conduct in that case constituted excessive force. 141 F.4th 720, 728 (5th Cir. 2025). However, we reached that determination in the context where the officer believed the suspect was going to flee or "fight with [him]," and, more importantly, where the suspect was not "blindsided" like the suspect in *Hanks*. *Trabucco* 141 F.4th at 729. Flores, however, was taken down in under ten seconds after Officer Perez

No. 25-50311

Street at 2:00 a.m., with crowds and horses, supplies the "more" that *Ramirez* found lacking, relying on *Tucker*, 998 F.3d at 178. The context cannot bear that weight on this record. *Tucker* involved a suspect who fled, led officers into a high-crime area, and displayed extreme agitation. *Id.* Nothing comparable appears here. *Trammell* itself confirms that "the quickness with which the officers resort[] to" injurious force "militates against a finding of reasonableness" even where the suspect pulled his arm away. 868 F.3d at 342. Officer Perez gave Flores roughly four seconds to comply with commands by an officer Flores may not have recognized as such.

The Defendant Officers' distinctions of *Trammell*, *Darden*, and *Hanks* turn on the degree of force used in those cases compared to this one. The operative facts here disclose force that tore Flores's bicep, dislocated his shoulder, broke his humerus, and fractured his spine while he was, at most, passively resisting. The cited cases placed the Defendant Officers on notice that immediate escalation to such force violates the Fourth Amendment.

## IV

The district court correctly denied the Defendant Officers' motion for summary judgment. Material factual disputes predominate, and the district court correctly determined that a jury could determine that the Defendant Officers violated Flores's clearly established right to be free from excessive

---

approached him from behind. Relevant too, in *Trabucco*, we reviewed the facts after a jury had already concluded that the defendant officer was entitled to qualified immunity, whereas here we are at the summary judgment stage, deciding whether the Defendant Officers must go to trial at all. What's more, in *Trabucco*, the suspect "pleaded guilty to a driving-under-the-influence charge." *Trabucco* 141 F.4th at 729. Flores was charged with no crime after the bodycam footage was reviewed by the APD. *Trabucco* therefore presents readily distinguishable circumstances from the instant case and, as our court held in *Tuttle v. Gallegos*, "context matters." --- F.4th ----, 2026 WL 1861047, at *11 (publication forthcoming).

No. 25-50311

force.  For these and the above-mentioned reasons, the judgment of the district court is AFFIRMED.

No. 25-50311

Edith Brown Clement, *Circuit Judge*, concurring in the judgment:

Qualified immunity cases are notoriously difficult, and reasonable minds may disagree. The facts, the law, and the procedural posture create a "tricky" interplay that requires a careful analysis. *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020). Excessive force cases present an even greater challenge. Oftentimes, it "is unclear at what point passive resistance becomes the sort of active resistance which justifies force." *Trammell v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017). Today, we confront a case on the "hazy border between excessive and acceptable force." *Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam)). I join the court's opinion that Perez's use of force while Flores was on the ground was excessive and unreasonable under the Fourth Amendment, and that Flores's right was clearly established.  I write separately because Officer Perez's takedown of Flores did not violate clearly established law. The context of Perez's takedown—at 2:00 A.M. on Sixth Street amid a large crowd of partygoers and near police horses—readily distinguishes this case from those relied on by the court.

For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (2011). In ascribing meaning to this idea, "the Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality." *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) (collecting cases). While "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Therein lies the tension.

The court relies on three cases—*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017), and

*Trammell*—for its qualified-immunity takedown analysis.[1] I respectfully disagree that these cases place the "constitutional question" here "beyond debate." *al-Kidd*, 563 U.S. at 741. Perez would not have had fair notice.

The court cites *Ramirez* for its holding that "[p]ulling [an] arm out of [an officer's] grasp, without more, is insufficient to find an immediate threat to the safety of the officers." 716 F.3d at 378. In the abstract, I agree. But the court's cursory use of *Ramirez* is divorced from details of that case. There, Ramirez had arrived at his landscaping business, where officers were executing a warrant for the arrest of his sister-in-law. *Id.* at 372. Ramirez arrived when officers were still present, and he claimed the officers had their guns drawn and were pointing the guns at his employees. *Id.* After a shouting match ensued between Ramirez and a police officer, Ramirez was told to put his hands behind his back, but he did not comply, so the officer grabbed his hand and told him to turn around. *Id.* Ramirez pulled away and was tased in the chest before he was taken down to the ground by several officers. *Id.* at 372–73. Here, unlike in *Ramirez*, there was no shouting exchange between Perez and Flores before the takedown. Instead, the takedown took place within seconds after Perez observed Flores near a police horse. All the while, Perez was patrolling a crowded public street, not a private landscaping business.

*Hanks* gets us closer to case specifics, but it does not provide a clean fit, either. Unlike Flores, who pulled his arm away from Perez, Hanks offered *no* physical resistance. 853 F.3d at 742–43. Both of my esteemed colleagues recognized that distinguishable fact in *Trabucco v. Rivera*, 141 F.4th 720 (5th Cir. 2025). There, the court concluded that *Hanks* did not settle whether

---

[1] The court also cites *Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018), but it does not analyze that case.

Officer Rivera's use of force was excessive because "Hanks offered no physical resistance," whereas Trabucco "jerked his hand away" from the Officer Rivera, "tussl[ed]" with Rivera, and "refused to get on the ground when Rivera pointed his taser at him." *Id.* at 729. Now, the court recasts *Hanks* in a more expansive light, concluding that it held that it is clearly excessive for an officer to resort to force after brief noncompliance. But our clearly established jurisprudence requires a more rigorous inquiry into facts.

*Trammell* is the closest case comparison, but it would not have supplied Officer Perez fair notice that his takedown of Flores violated the Fourth Amendment. Critically, in *Trammell*, we reversed summary judgment in favor of the officers, concluding that the law at the time of Trammell's arrest "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." 868 F.3d at 343. Unlike in *Trammell*, where the suspect was in a parking lot across the street from a club, *id.* at 336, Flores was on Sixth Street at 2:00 A.M., where there were large crowds of people and police horses on the street after bar closures. The environment in this case was palpably more unsafe, especially given the hostility that police officers faced on Sixth Street at this hour, compared to the less chaotic parking lot in *Trammell*. In short, the context leading up to Perez's takedown was far more "tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Granted, *Trammell* is similar to these facts insofar as Perez quickly resorted to a takedown, but the context here was readily distinguishable. Thus, I disagree that *Trammell*, which involved several officers using a takedown in a parking lot, provided fair notice to a single officer, who was patrolling a public street with horses, drunk people, and large crowds at 2:00 A.M., in his takedown.

The court swiftly dispenses with these factual distinctions and narrowly focuses on the distinctions between "the degree of force." But in

excessive-force cases, "context matters." *Tuttle v. Gallegos*, --- F.4th ----, 2026 WL 1861047, at *11 (5th Cir. 2026) (publication forthcoming). Since our moment-of-threat rule was vitiated by the Supreme Court, we must now "account for all relevant circumstances, including the 'events leading up to the climactic moment.'" *Id.* (quoting *Barnes v. Felix*, 605 U.S. 73, 76 (2025)); *see also Trabucco*, 141 F.4th at 729 ("These multiple factual distinctions matter because excessive force claims are necessarily fact-intensive and turn on the facts and circumstances of each particular case." (cleaned up)).

The court concedes that the "takedown presents a closer question," before concluding that it is "controlled by clearly established law." That concession reinforces my conclusion that the law was not clearly established. For these reasons, *Ramirez*, *Hanks*, and *Trammell* did not settle "beyond debate" that Perez's takedown of Flores violated a clearly established right.

Accordingly, I agree with the court that Perez and the other officers are not entitled to qualified immunity because they used excessive force while Flores was on the ground in violation of clearly established law. Yet I respectfully disagree that Perez's takedown violated clearly established law.